UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| SANDRA BELL, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) Case No. 3:17-CV-705 JD |
| Wal-Mart Stores East LP, et al., | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Sandra Bell filed this lawsuit in state court, alleging one count of negligence after a merchandise display fell on her while shopping at a Wal-Mart store. Defendants then removed the action to this Court [DE 1] and eventually filed the instant motion for summary judgment. [DE 14] Also pending is Defendants' Rule 56 motion to strike portions of an affidavit submitted by Ms. Bell. [DE 20] For the reasons stated herein, the Court will deny both motions.

## STANDARD

On summary judgment, the moving party bears the burden of demonstrating that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289

(1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

Under Indiana law, disposition of negligence actions via summary judgment "is rarely appropriate … because they are particularly fact sensitive and are governed by a standard of the objective reasonable person, which is best applied by a jury after hearing all the evidence." *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012) (citing *Rhodes v. Wright*, 805 N.E.2d 382, 387 (Ind. 2004)). "Nonetheless, summary judgment is appropriate when the undisputed material evidence negates one element of a negligence claim." *Id.*

## FACTUAL BACKGROUND

On September 11, 2015, Ms. Bell visited a Wal-Mart store located in Mishawaka, Indiana. While shopping, she used a motorized scooter provided by the store due to her chronic obstructive pulmonary disease. She proceeded to the women's clothing section, where she took a pair of jeans from a shelf situated along the length of an aisle. Deciding to try the jeans on for size, Ms. Bell drove her scooter toward the fitting rooms, but when she reached the end of the aisle, an endcap shelving unit to her right fell over on her, without warning. The shelving itself fell on top of her, knocking her from the scooter and onto the floor. [Deposition of Sandra Bell 20:22-21:3] Ms. Bell does not know how or why the endcap fell on her. *Id.* at 24:20-23, 76:22-77:2. Nor did she observe any customers or employees in the vicinity at the time of her accident. *Id.* at 24:11-19.

The store's assistant manager, Mark Robinson, responded to the scene and found Ms. Bell lying on the floor with the endcap on top of her. [Affidavit of Mark Robinson ¶ 4] He did

not notice any damage to the endcap. *Id.* ¶¶ 5-6. Mr. Robinson and others then "reattached" the endcap and inspected its stability by "proceed[ing] to kick and shake it." *Id.* ¶ 7. The endcap remained "stable and in place." *Id.* Mr. Robinson then inspected the scooter and similarly did not notice any damage. As a result of this "investigation," Mr. Robinson and others "determined that Sandra Bell had ran into the end cap with her electric cart, dislodging it from its base and knocking it over onto herself." *Id.* ¶ 11.

## DISCUSSION

To succeed on a negligence claim under Indiana law, Ms. Bell must show: (1) that Defendants owed her a duty; (2) that Defendants breached that duty by allowing their conduct to fall below the applicable standard of care; and (3) that Defendants' breach proximately caused Ms. Bell's injury. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). When, as here, negligence is based on premises liability, the duty owed depends on plaintiff's status while on the landowner's property: whether a trespasser, licensee, or invitee. *Winfrey v. NLMP, Inc.*, 963 N.E.2d 609, 612 (Ind. Ct. App. 2012) (citations omitted). The parties do not dispute that Ms. Bell was an invitee in Defendants' store. As such, Defendants owed her a "duty to exercise reasonable care for [her] protection" from any dangerous conditions while she shopped at their store. *Henderson v. Reid Hosp. & Healthcare Servs.*, 17 N.E.3d 311, 315 (Ind. Ct. App. 2014). A landowner, however, must have actual or constructive knowledge that the dangerous condition exists on the premises before liability can be imposed for any breach of this duty. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012).

Defendants maintain that no genuine issues of fact exist regarding the existence of an unreasonably dangerous condition or whether they had any actual or constructive knowledge of any such alleged danger. They also argue that the doctrine of *res ipsa loquitor* cannot save Ms.

3

Bell's negligence claim from summary judgment. Ms. Bell does not oppose Defendants' arguments regarding dangerous conditions and requisite knowledge; she only contends that her claim should advance based on *res ipsa loquitor*. "*Res ipsa loquitur* is a rule of evidence which permits an inference of negligence to be drawn based upon the surrounding facts and circumstances of the injury." *Rector v. Oliver*, 809 N.E.2d 887, 889 (Ind. Ct. App. 2004) (citing *K-Mart Corp. v. Gipson*, 563 N.E.2d 667, 669 (Ind. Ct. App. 1990)). "The doctrine operates on the premise that negligence, like any other fact or condition, may be proved by circumstantial evidence." *Id*. at 890. To create such an inference by way of *res ipsa loquitor*, a plaintiff must eventually show: (1) that the injuring instrumentality was within the exclusive management and control of the defendant; and (2) that the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care. *Id.* Defendants have not shown, however, that no genuine issue of material fact exists as to either of these requirements, and so their motion for summary judgment must be denied.

    *a.*    *Exclusive Control*

"The element of 'exclusive control' is an expansive concept which focuses upon who has the right or power of control and the opportunity to exercise it, rather than actual physical control." *Vogler v. Dominguez*, 624 N.E.2d 56, 61 (Ind. Ct. App. 1993) (internal citations omitted). "Exclusive control is satisfied if the defendant had control at the time of the alleged negligence." *Id.* at 61-62; *see also Whiteco Indus., Inc. v. Non-Stop Creativity Corp.*, 2015 WL 8957852, at *3 (N.D. Ind. Dec. 15, 2015) ("A defendant need not control the causative instrumentality at the exact moment of injury, provided that the defendant was the last person in control.") (citations omitted). "[P]roof in a *res ipsa loquitur* case seldom points to a single specific act or omission; typically, it points to several alternative explanations involving

negligence without indicating which of them is more probable than the other." *Vogler*, 624 N.E. 2d at 62 (citing *New York, Chicago & St. Louis R.R. v. Henderson*, 146 N.E.2d 531 (Ind. 1957)). Because of this, Ms. Bell need not "eliminate with certainty all other possible causes and inferences[.]" *Id.*

Defendants first argue as a matter of law that they could not have had exclusive control over the endcap because "[i]t is common knowledge that customers will peruse the racks and shelves of retail stores like Walmart while shopping, and in doing so may move *merchandise* around the store." [DE 16 at 14] (emphasis added). Defendants' theory misses the mark. This case is not about whether Defendants had exclusive control over the merchandise in their store— Ms. Bell was knocked from her scooter by a toppling endcap, a piece of otherwise stationary shelving, not by falling merchandise or other movable objects. For this reason, many of the cases cited by Defendants do not apply here, such as *Reddick v. Dillard's Inc.*, Civil No. 08-844, 2010 WL 1752555 (S.D. Ill. Apr. 30, 2010) (holding *res ipsa loquitor* inapplicable where plaintiff tripped over a shoe department foot stool and defendant's employees testified to observing customers and children move the stools prior to the accident); *Curry v. J.C. Penny Corp.*, Civil Action No. 09-830, 2010 WL 972430 (D. Md. Mar. 12, 2010) (finding defendant store did not have exclusive control over merchandise that fell from shelf onto plaintiff's head because nothing prevented customers from removing or adjusting merchandise on shelves); or *Ascher v. Target Corp.*, 522 F. Supp. 2d 452 (E.D.N.Y. 2007) (holding *res ipsa loquitor* inapplicable where a cooking pot fell from display and injured plaintiff's foot, because it could have been "placed precariously on a shelf by another shopper rather than the store owner.").

Moreover, the court in *Assenato v. Target Corp.*, which Defendants also cite, specifically noted that "there does not appear to be a hard-and-fast rule that retail stores do not have

5

exclusive control over merchandise on their shelves." No. 11 C 6846, 2012 WL 205858, at *2 (N.D. Ill. Jan. 24, 2012). To illustrate this point, the *Assenato* court discussed a Maryland state case, *Norris v. Ross Stores, Inc.*, 859 A.2d 266 (Md. Ct. Spec. App. 2004). The facts in *Norris* closely mirror those here. In that case, plaintiff testified that she was walking in defendant's store when a shelving unit at the end of an aisle collapsed on her. *Norris*, 859, A.2d at 269. She testified at her deposition that she had not touched the shelving unit and had not seen any other customers or employees working in the area. *Id.* The trial court rejected her reliance on *res ipsa loquitor* and granted summary judgment for defendant, but the appellate court vacated the decision, disagreeing with defendant's argument that third-party access to the shelving unit prevented plaintiff from establishing defendant's exclusive control and holding that these facts created a triable issue as to that element. *Id.* at 272. The same is true here. Defendants point to no evidence in the record indicating that Ms. Bell or any third parties touched the endcap prior to the accident[1], and she herself testified that no employees or other customers were in the vicinity when the endcap fell on her. [Bell Dep. 24:11-19] These details leave open an issue of material fact as to the element of exclusive control.

Next, Defendants fault Ms. Bell for failing to prove at this stage that she herself did not cause the accident, and further argue that "the possibility of her suffering the injury without any negligence on the part of Walmart precludes the application of res ipsa loquitor in this matter." [DE 16 at 15] In support, Defendants cite *Lusher v. Norfolk S. Ry. Co.*, Cause No. 2:12-cv-37, 2014 WL 3894347, at *7 (N.D. Ind. Aug. 8, 2014), for the proposition that *res ipsa loquitor* does not apply where a plaintiff fails to "rule[ ] out the possibility that his own negligence caused the

---

[1] Defendants' theory that Ms. Bell caused the accident by driving her scooter into the endcap will be addressed below.

injury." But the standard articulated in *Lusher* did not come from Indiana law; that case arose under the Federal Employer's Liability Act (the "FELA"). As *Lusher* itself makes clear:

> Although the Seventh Circuit Court of Appeals has not directly addressed this issue, it concluded in an analogous case that to use *res ipsa loquitur* to withstand a motion for summary judgment on a claim *under the FELA*, a plaintiff must present some evidence that would permit a jury to exclude all causes other than the defendant's negligence. *See Robinson v. Burlington N. R.R. Co.*, 131 F.3d 648, 655 n.6 (7th Cir. 1997) ("[B]efore employing the doctrine [of *res ipsa loquitur*], the jury [must] first eliminate the possibility that the plaintiff's activity contributed to the injury.").

*Id.* at *15 (emphasis added). Unlike the FELA, Indiana tort law does *not* require a plaintiff to make such a showing in order for *res ipsa loquitor* to apply:

> There is no reason in law why a plaintiff may not offer such evidence as may be available tending to show specifically the items of negligence and still rely upon the inference also permitted under *res ipsa loquitur*. A number of different causes or inferences may be thus left to the final determination of the triers of the facts.

*Henderson*, 146 N.E.2d at 539; *see also Gipson*, 563 N.E.2d at 671 (citing *Henderson* and holding, "It is therefore not necessary for a plaintiff to exclude every other possibility other than the defendant's negligence as a cause."). Given that Indiana law governs this case, Ms. Bell need not "rule herself out" or narrow down the possible causes behind the accident. *Rector*, 809 N.E.2d at 890 ("[T]he possibility of multiple causes does not automatically defeat the application of *res ipsa loquitor*.") (citing *Vogler*, 624 N.E.2d at 62). After all, the whole point of *res ipsa loquitor* is to "allow an inference of negligence to be drawn *when evidence of causation is lacking*," *Gipson*, 563 N.E.2d at 671 (emphasis added), and Ms. Bell testified that she does not know how or why the endcap fell on her. [Bell Dep. 24:20-23, 76:22-77:2] Therefore, Defendants' argument based on the FELA standard for *res ipsa loquitor* falls short.

Defendants insist that Ms. Bell must have knocked over the endcap herself by running into it with her scooter, thereby removing the endcap from Defendants' exclusive control. *See*

*Vogler*, 624 N.E.2d at 61-62 ("Exclusive control is satisfied if the defendant had control at the time of the alleged negligence."). Defendants reach this conclusion because Mr. Robinson's post-accident "investigation found that Bell ran into the end cap with her electric shopping cart, dislodging it from its base and knocking it onto her." [DE 16 at 15] But the record does not go so far. For example, even though Mr. Robinson's affidavit recites this same "determination," neither it nor anything else in the record speaks to the endcap's condition *before* the accident. Indeed, Mr. Robinson arrived at the scene to observe "Sandra Bell on the floor *with the end cap over her*." [Robinson Aff. ¶ 4] (emphasis added). And because of this, it is somewhat of a misstatement for him to later claim that he and others "*reattached* the end cap" prior to testing its stability, as nothing suggests the endcap was ever properly attached in the first place. *Id.* ¶ 7 (emphasis added). Furthermore, Mr. Robinson did not observe any damage to the endcap *or* the scooter after the accident, which one might expect to see if Ms. Bell actually collided with the shelving unit. *Id.* ¶¶ 5-6, 10.

Overall, neither the evidence presented nor any of Defendants' arguments indicate that no genuine issue of material fact exists as to the element of exclusive control.

      b.      *No Ordinary Occurrence*

Again, not only must Ms. Bell eventually show that Defendants had exclusive control over the endcap, but she must also demonstrate that "the accident is of the type that does not ordinarily happen if those who have the management and control exercise proper care." *Gipson*, 563 N.E.2d at 669. The Court need not devote much analysis to whether an endcap falling on a customer without a known cause satisfies this element. Under Indiana law, "as a matter of common sense and experience, display racks do not ordinarily fall for no apparent reason on customers in stores." *Id.* at 670; *see also, e.g.*, *Norris*, 859 A.2d at 273 ("[W]e cannot say that

8

falling shelving units are the sort of event that ordinarily happens if those who have the management and control exercise proper care."). Defendants attempt to distinguish *Gipson*'s language concerning this element by pointing to Mr. Robinson's post-accident conclusion that Ms. Bell herself caused the accident. But as discussed above, the current record leaves open questions as to what caused the endcap to topple over onto Ms. Bell and whether Defendants had exclusive control of the endcap. In the absence of any such evidence, Defendants cannot carry their burden at summary judgment on this element, either.

## CONCLUSION

For all these reasons, the Court **DENIES** Defendants' motion for summary judgment. [DE 14] Moreover, as Ms. Bell's affidavit had no bearing on the Court's decision, the Court **DENIES** Defendants' motion to strike portions of said affidavit as moot. [DE 20]

SO ORDERED.

ENTERED: March 14, 2019

/s/ JON E. DEGUILIO
Judge
United States District Court